May I have the permission? You sure may. Thank you. Okay, we're ready for our second case, Scannell Properties number 516 versus Edwardsville 2531-23. We'll hear from you, Mr. James, thank you. May it please the court, Eddie James from the law firm of James Soba in Kansas City here to present the argument for the appellant's Scannell Properties 516 LLC and Scannell Properties 673 LLC. If I speak too fast or I'm unclear to Judge Kelly, if he'll let me know, I would very much appreciate it. I'm going to give you an outline, I'm gonna do a brief introduction and then I'm going to talk about the two procedural challenges to this appeal that have been raised by motions to dismiss. And then I'm gonna talk about the standard of review that the court should employ and then I expect to talk about the merits of the arguments after that. I would like to reserve three minutes if the court will help me. I'll shoot for that too, right, right. But going to the issue of the two procedural challenges, the first motion to dismiss dealt with the fact of whether this was, the court has jurisdiction at all. It was an issue of whether the court of appeals, whether there was a judgment sufficient for appellate review and a direct jurisdiction exists under 28 U.S.C. 1292 A1. The district court did not just issue a collateral ruling dismissing some causes of action and allowing others to survive. It explicitly denied a formal pending motion for preliminary injunction. That is in the order. It reviewed the basis for the preliminary injunction and said as a result of the dismissal of these counts, the preliminary injunction is denied. As such, the law suggests that because those issues are inextricably intertwined with a denial of an injunctive relief, the court should exercise pending jurisdiction to review the entirety of the district court's order. And for that cite, our brief cites Moore v. City, it's 57 F. 3rd 924. I mean, the facts are before the court's order, we had a motion for preliminary injunction and after the court's order, we didn't have it. It was denied. It was a ruling denying the preliminary injunction. So I think that's pretty clear that the denial of a preliminary injunction grants appellate jurisdiction. The second motion to dismiss relates to mootness. In that issue, the city passed an ordinance impacting the enforcement of the first two ordinances and that was submitted to the court. The reason that the case is not mooted, there are several reasons. The first reason is the voluntary succession doctrine prevents the mootness argument they are raising. Can I, I don't wanna mess up your train of thought, but before you get to sort of the exceptions, the voluntary succession doctrine, for example, did the new ordinance, by repealing the original ordinance and softening, to some extent, the restrictions on heavy vehicular traffic on 110th Street, you know, particularly for southbound off of the interstate, would that, in the absence of an exception, moot your appellate claim? Because, and I'll ask it this way, for a preliminary injunction, for example, the third factor is the balance of equities. Well, now, Scandal Properties definitely still has a gripe because northbound heavy vehicles can't turn left. When you get out, and southbound vehicles can turn right into the property, so that appears, at least to me, to eliminate the ingress issue for the original ordinance, there's still now a quite different argument, but all of these are quite different from the balance of equities for the district court, had the district court considered this not moot, but considered the four factors. It is a substantially different ordinance. It still impedes you, but not to the degree that the original ordinance did, and the original ordinance is a thing of the past. What do you do with that? Right, I understand the court's question, but Ordinance 1095, which is the newest ordinance, still unlawfully forces a right-hand circuit route that prohibits tractor-trailers from exiting Scandal's property. It still discriminates against vehicles going to and from Edwardsville and not going to and from Edwardsville. But that's not what the district court didn't consider. 1095. You're right. Considered the original ordinance. You're absolutely right. And we're a court of review, not a court in the first instance. Right, but we still need this court to instruct the court that the voluntary secession doctrine, this fits so neatly. That's why I'm getting to this before we get to the voluntary secession. Okay, okay. I mean, it is a different set of facts now, but we think the existing violations that are present in 1095 still do not provide reasonable access to Scandal to the property as they're entitled to by federal statute. Okay, and then going to the voluntary secession. Hold on, counsel, before we do that, I just want to pick up on this thread. In terms of how we view this suit overall, which ordinance are we to consider on the merits? All right, on the merits, we're looking at what the court did in its motion to dismiss order. And so that would be the first order, I mean, the first ordinance and the second ordinance. So we're looking at what the court's decisions were regarding that order, right? And so, but the logic of doing that is that we don't want the trial court to make the same mistakes and to the prejudice of Scandal. And the court needs to understand that since the court's order, for example, this court issued a ruling on the Armstrong case, which impacted the private right of action, equitable private right of action arguments that the court rejected evaluating only one standard. We don't want to be right back before this court. Well, I understand why you wouldn't want the district court to engage in the same analysis that it did, but to Judge Bacharach's question, and I think mine is the same, which is, if the merits of this appeal are about two ordinances that are no longer in effect, why shouldn't we view this as you are asking this court for an advisory opinion as to how the law should play out, if and when it has to apply the same sort of doctrines to a newer ordinance that is in effect? No, I understand the court's question, but substantial relief can still be granted, which is why the court should retain jurisdiction. Case becomes moot only when it is impossible for a court to grant any effectual relief whatsoever to the prevailing party. And that's the eerie- Counsel? Yes, Your Honor. Counsel, I was under the impression that the district court has not addressed the question of mootness. No, that is correct, Your Honor. We do not find facts, as Judge Bacharach indicated. We're not a fact-finding body. So why shouldn't this then go back to the district court to finish his job? Well, if the court were inclined to do that, we think precedence requires that the existing district court order be vacated, and we address that in our response to the motion to dismiss. That's called the Munsingware vacatur. But going to the judge's question, and I think it's a good one, the harm still exists that the claims aren't going away that we advanced under the new ordinance versus the old ordinance. I agree the old ordinance presents a different set of facts. There's no question about that, than the current ordinance, and that the old ordinance, by the terms of the new ordinance, has been vacated. But this city has changed this ordinance three times in 14 months. And so the risk is, is that we go back down, and the city emphasizes that they can put up road signs, and that prevails over the language of the ordinance, that they could put up a sign saying no heavy trucks, no trucks with eight axles. They could put up a sign that would trump the ordinance. That's what the language of the ordinance says. So it's important that the court guide the, not only the trial court, but guide the parties. I mean, there's meaningful relief that can be afforded by this court, given the lay of the land, and the pattern by the city here, of its repeat ordinances. Can I push back on that a little bit? Not in an argument in a sense, but to tell you what my concern about what you just said is. So we can say we affirm, or we reverse an ordinance that doesn't exist anymore. And that just seems convoluted to me, or illogical. And, oh, by the way, this is an interlocutory appeal. And so you can go back and amend the complaint, file a new motion for a preliminary injunction to enjoin the new ordinance. And if the district court then decides, oh, well, I do need to balance the equities, now I'm gonna balance the equities about the hardship to scale properties for these two buildings that is gonna take into account the hardship for northbound vehicles on 110th Street, turning left in the convoluted route that they would need to leave the property in order to get back on the interstate. And now at least the district court is gonna be balancing the equities of something that exists as opposed to us reviewing, for example, affirming an alternative ground. So we can say, okay, well, we're gonna review the four factors and determine whether or not the district court was right to deny the preliminary injunction, not based on mootness, but based on a consideration of the four factors. Well, how do we consider those four factors for an ordinance, or the third factor for an ordinance that doesn't even exist anymore and has substantially different provisions? No, I totally understand the conundrum here arising. Aren't you in discovery, counsel? Your pending claims in the district court? That is correct, your honor. We are in discovery on the pending claims in the state court claims that were not dismissed. Yes, sir. And so, but I think you have to look and say, look, the burden is on the city to show that, the language the court has used in the past is formidable burden of showing it is absolutely clear the alleged wrongful behavior could not be reasonably expected to occur. I mean, what's to stop the city from changing the ordinance every six months, every three months, if it thinks it can delay justice to Skinnell here? I mean, it puts us in a very difficult position with the people we're selling the property to, like Steamboat and Medline. It puts us in a, or have sold the property to, it puts us in a position of people having uncertainty. Counsel, you may be right about that, but why couldn't the district court say, well, their argument for irreparable harm on a preliminary injunction is now a lot stronger because there's record evidence that the city may be at many of the ordinance with such frequency to either avoid judicial review or to some detriment to Skinnell. I mean, we could make that argument, I mean, if the court vacates the order that exists because it is moot, and we could amend and make those arguments to the trial court. And that would be something that, I mean, we absolutely could do, but it doesn't, it doesn't address the live controversy. I mean, the court, substantial relief can still be granted here. A case, you know, again, that's from the case Erie v. Papps AM, which is 529 U.S. 277, and Knox v. SEIU Local 1000, which is 567 U.S. 298. We have a concrete interest in pursuing these constitutional issues and the statutory private right of action issue so that we don't have to come before this court again, and the current ordinance is causing our client substantial harm. And the pattern of repeat ordinances is causing our client substantial harm. It's hard to sell a property that we're developing if the ordinance about road access is changing as frequently as it is. It creates a lot of uncertainty on the, it's causing irreparable harm, and so the irreparable harm exists, and we need guidance from the court to this trial court and to the parties that the statutes at issue and the constitutional rights at issue prevent it. I see that I'm. We're gonna, I'm gonna give you more time. Okay. No, I appreciate that. I was just concerned about the time. I understand. So, but I understand the court's concern about what it is supposed to do, but I think the court can say, look, this ordinance is still, the new ordinance, the old ordinance, the middle ordinance, they're all subject to these rules that you can't avoid. Like that these, the perpetual harm, the persistent harm is continuing from the ordinances that exist and the ordinance atmosphere, if you will, that exists. And these are interstate travel is a, interstate commerce is a fundamental right, as we pointed out in our briefing. I mean, this is one mile from I-70 in Wyandotte County in Kansas City, Kansas. And if you. That's really irrelevant to the questions that have been asked. Right, okay, your honor. You don't have a final deal here. And you want us to make findings of fact. And that's the district court's job. No, it is the district court's job to make findings of fact, but the district court made findings here at the motion to dismiss stage, right? And so the. That was before the new ordinance, too. That is correct, your honor. But I think the voluntary succession argument, I mean, that was the one I thought really rang true to me, is that the Tenth Circuit has said, this seems like a textbook example. They have to show it's absolutely clear that the alleged wrongful behavior could not reasonably expected to reoccur. And that's the prison legal news case we cite in our brief, 944 F. 3rd 868. So I mean, like, the burden is on them when they moot the current, or when they strive to moot the current appeal by tweaking the ordinance yet again. And so we think this court has jurisdiction. We think the case is not moot because substantial relief can be granted under the ordinance. And we think that the voluntary succession doctrine applies. Alternatively, if you're inclined to dismiss it because of mootness, we would ask the court vacate it as precedent suggests. And as fairness, the existing trial court order, that it would be vacated. And we would be on all the week. We get that request a lot. I don't know that I've ever gotten a request to vacate the denial of a preliminary injunction that the district court, all they said was, it was moot. Well, the district court didn't say, the district court didn't say it was moot. We would want the district court. It was moot in light of the dismissal. Right, right, right. I'm sorry, yeah, yeah, right. It was moot in light of the dismissal. Right. So you're wanting us to say, okay, we're gonna vacate the district court's denial of a preliminary injunction based on mootness because we think it's moot. Well, that, I mean, we think you should. Why do you care? We, well, because there's this bad order out there that has language and law. It will actually be on mootness. Well, I mean, but that's why you should reverse it on the constitutional grounds and on the statutory private right of action grounds. Okay. Because that law is still out there on this case and I think this court, the trial court, didn't have the benefit of this court's decision that was issued after it ruled, it ruled in June and this court issued a decision in November in the National Association of Industrial Bankers, which was Judge Federico was on the panel for that one. And that clearly says we have a private right of action because the Armstrong factors require two factors and the court only dismissed the private right of action based upon one factor. And so if we can win on the private right of action and say, hey, we have the ability to enforce these rights, that is effective relief that is important for future goings on and future clarity. So I know I'm way over time. Yeah, it's all good. You know, it's also helpful, but if you don't mind, I want to do this. I do want to give my colleagues ample opportunity to ask you whatever they want, including mootness, merits or whatever. So I'm totally fine. Judge Kelly, do you have any questions? No, I think we've asked everything I can think of. I've asked everything, but I will, because we spent so much time on mootness. If you want to spend one, I'll give you one minute, maybe on the merits, I mean, you touched on the merits. Well, I did touch on the, I think the private right, the equitable private right of action claim is clear. I want this court to understand that every court of appeals that has evaluated whether a preemption claim to enforce the STAA, the First Circuit, the Sixth Circuit, the Seventh Circuit and the D.C. Circuit, all said you could do that. And admittedly, all of those predate Armstrong. Admittedly, right? And so I want the court to understand that as well. But Armstrong did not abrogate the equitable relief claim to enforce the STAA that these other circuit courts found. And so I just want to emphasize that point, because the private right of action is important to me. Thank you. All right, thank you. And we'll hear from the appellee. Good morning, Your Honors. Brandon Meisner for the appellees. May it please the court. Ecclesiastes chapter three, verse one, and Pete Seeger tell us that there is a time for every purpose under heaven. And this is not the time for this interlocutory appeal. This interlocutory appeal is both premature and moot. It's premature because the district court never examined the merits of the preliminary injunction motion because it dismissed the underlying claims. And therefore found the preliminary injunction motion was moot. But why isn't this a classic pendent jurisdiction case? You can look at it that way if you want, Your Honor. But the fact of the matter is, there really are no claims, at least at this point, for the district court to grant a preliminary injunction motion on. That's only because the district court mooted the preliminary injunction issue by really getting to the heart of several of these federal claims. Correct, Your Honor. But, and I will happily talk about why the district court properly dismissed those claims because they really do not have any merit, as alleged in the first amended complaint. On the mootness argument. No, we're talking about claims of three, five, and seven. Three claims that we just mentioned. Yeah, I mean, we were talking about the SDAA was the basis of the preliminary injunction motion. The other claims actually were not the basis of the preliminary injunction motion. The constitutional claims for equal protection violations, due process, the dormant commerce clause. The only one that really tied into the preliminary injunction motion was the one for declaratory judgment under the SDAA. So there's really no need to reexamine those constitutional claims that the court is not inclined to. And the other part of this is the mootness argument. The ordinance was passed a couple of months later. There was a moratorium. The ordinance 1076 was not enforced. They continued to build and have built their properties. And other property owners out there have built their properties as well. And so what the city said in the moratorium ordinance is, let's put a pause on this. We'll have a traffic study performed. The city got the preliminary results back of the traffic study from the engineer. And said, okay, this is the most reasonable and practical route under the SDAA's requirements. And it is going south off the interstate, turning right into the property, continuing on through this internal road, which was always going to be there. I'll get to that in a minute. And continuing north to Riverview Avenue, back to the intersection, back to I-70. The traffic engineer that the city retains says, that is the most reasonable and practical route, which is the SDAA language. And the other thing I want to make clear is that the appellants have always had access to their property and to the interstate. The appellants like to conflate their properties with this entire development, which is about 160 acres. The Sconell entities only own two parcels in this larger development. And Sconell 516 is entirely on the western half of this development. It has no frontage on 110th Street. It has no access to 110th Street. But for the private road that they chose to build, the Sconell 516 access to the interstate is and always has been through Riverview Avenue. So they have always had access to their property and they have no need to utilize 110th Street, but for the private road that they chose to build. And the other part of it is Sconell 673 is in the very southeast corner of this property. They like to say that the city's singled out Sconell or 516 or 673 with this ordinance, but the majority of the frontage on 110th Street belongs to other entities called Medline and Steamboat. They own more than half of the frontage on 110th Street and they're not parties to this lawsuit. I thought we were talking about mootness and now I'm hearing a merits argument as to why they don't suffer any harm. Well, I feel very strongly about they have not suffered any harm. And I do think it should be dismissed as moot. This really should. And the one thing that had been mentioned before is discovery is ongoing in the district court. I asked the district court, why don't we stay discovery while this appeal gets resolved to see what happens? And the district court said, no, you keep on with discovery. And so we're diligently doing that. But in the briefing, I think in the reply brief to this court, the appellants mentioned the fact that they might amend their pleadings in the district court, something they have not done to this point in time. So this is very fluid and there is no final judgment. This is just an interlocutory appeal. To me, it makes far more sense for this court not to issue an advisory opinion, but to just dismiss the appeal and let it go back and take its normal course. If they feel like this ordinance 1095 has done something worse, that now they have a basis for asking for another preliminary injunction, then they can amend their complaint and they can seek that and the district court can rule upon it in due course. And my thought is that, my suggestion to you is that it's far better for this court to review these things after a final judgment and not to get way into them halfway through while the facts are still changing. Legal theories may still be changing based upon potential amendments. So I really do feel that this court should just simply dismiss the appeals moot. If we wanted to turn to the elements of the claims, the Surface Transportation Assistance Act, the STAA, was the only basis for their declaratory judgment action and for their preliminary injunction motion. And this is one, this is a comprehensive scheme enacted by Congress to govern access to the interstate highway system across the nation among other things. And it has expressly delegated to the Secretary of Transportation the ability to enforce the STAA. The Congress has chosen to make that decision and there is no private right of action under the STAA. And what we've been told is, well, okay, maybe there's no private right of action under the STAA, but we have this sort of inherent right of action under the Supremacy Clause. But the Armstrong decision really was a watershed case on that issue. The Armstrong court said that there is no private right of action that comes inherently from the Supremacy Clause. It is more of a rule of decision. To allow them to proceed on some kind of Supremacy Clause argument would render Armstrong meaningless. And the 10th Circuit has construed Armstrong in MG through Garcia versus Armijo in 2024. And it said, the Supreme Court rejected the notion the Supremacy Clause creates a cause of action. And the cases that they do rely upon that have interpreted the STAA all precede Armstrong. The Quest case out of this court was in 2004. The O'Sable liquid products case out of the 7th Circuit was in 2008. Actually, the Northern District of Georgia, the district court there conducted, I thought, a very exceptional review of the STAA. And it expressly said that the one case out of Kentucky that they relied upon was contrary to Armstrong. So there really is no private right of action, and none that can be implied from the Supremacy Clause. And if we wanted to turn to the constitutional claims, they have this equal protection claim. But the first thing you have to do in evaluating an equal protection claim is to look to see what the standard of review is. Does it involve a fundamental right? Does it involve a suspect or quasi-suspect class? And Sconell says in its reply brief at page 12, quote, Sconell never argued it was in a protected class. There is no fundamental right to drive tractor trailers of any weight you want across state lines. So the only possible- Well, that's not, is it, and I realize this is not necessarily your argument, but I was a little confused about both sides viewing about whether or not you have a right to drive heavy traffic, because I don't know that we have any of the drivers of heavy traffic on 110th Street in our courtroom today. So it seemed a little strange version that I had struggled with on both sides. Why were we talking about a right to drive heavy traffic? It seems like the significance of the right would be the right to have a business that caters to heavy vehicular traffic. So when it's similarly situated to Sconell. I suppose that's a different way of sort of thinking about it. But I would say the analysis is the same. There's no fundamental right to cater to heavy trucks any more than there's a fundamental right to drive heavy trucks on any particular street you want. I did very much like the quote out of the Southern District of New York where they started to, where the parties in that case had said, well, this impacts our fundamental right to travel, and the Southern District of New York said, plaintiff's contention that the ordinance infringes their constitutional right to travel is frivolous at best. The right to travel prohibits discrimination against residents of other states, and has been most often applied to migration causes challenging durational residency requirements. Define plaintiff's activity protected under the right to travel would trivialize that right in the Constitution itself. Citizens have the right to travel freely from state to state. The Constitution does not protect any right to drive trucks of any particular weight from state to state. And I think that's been settled case law here for nearly a century that local governments can regulate the weight of trucks on city streets. And I, although it's not in the record, it is ubiquitous that there are designated truck routes in almost every city you travel through. If you look for the signs, you see them. And there are also exceptions to these truck routes for local deliveries. And one of the things we've been told is, well, this local delivery exception is unfair, but my thought is it encourages interstate commerce. If I don't live in Edwardsville, but if I did and I wanted to order a product from Kansas City, Missouri 20 miles away, the local exception allows interstate commerce to come from Missouri to my home in Edwardsville or my business in Edwardsville or whatever it may be. This ordinance does not make any distinction between where a truck is registered, where it's licensed, what its state of origin is. It has no real impact upon their property in any way or their access. The only thing it does is say, hey, if you're making a 1,000 mile trip across the country to make some delivery at this property, when you get there, maybe you turn right and left instead of just turning right. I mean, it is the definition of incidental. It is such a minus. Isn't that quite an overstatement? Their business caters to heavy vehicular traffic. And so to say, well, no big deal. You're only customer, you're not going to cater to Bob Bacharach because I don't drive a heavy vehicular vehicle. And to say that is their clientele, as I understand it, 100% of their clientele. And to say, well, if you come in on I-70, well, at least under the original ordinance, you couldn't turn right. You can only turn left into Edwardsville. No big deal. Well, no big deal as long as that's not 100% of your clientele. Well, and keep in mind, this does not affect 100% of the people who work at those properties. Passenger vehicles can certainly enter and exit the property as they wish. The only thing this does is says, you have a choice of a right turn or a left turn. We're asking you, under the new ordinance, to make a right turn into the property, to make a right turn out of the property, and go right back to the interstate. Our engineer for the new ordinance has certainly said that is the most reasonable and practical route. And the thing I would say about that also is, although this portion isn't in the record, that was done with the approval of the Kansas Department of Transportation. And this part is in the record. The Kansas Department of Transportation or the Secretary of Transportation have the ability to tell the city of Edwardsville that that's not reasonable and practical. They can always step in and do that. And the statute gives them the right to file a lawsuit. But more importantly, they have the practical ability to simply withhold federal funds. They could withhold funds from the city and extort anything they want from the city in terms of access to this property. So at any point in time, if the Secretary of Transportation or the Kansas Department of Transportation says, hey, this is unreasonable, they can make the city comply at the drop of a hat simply by withholding their money. And I see my time is drawing short, so to fall back to Ecclesiastes and Paul Seeger, I'm sorry, Pete Seeger, there is indeed a time to cast away stones. And I would suggest that this is the time to cast away this stone and simply dismiss the appeal. Or if you're going to look at the merits, affirm the district court's order of partial dismissal. Thank you. Thank you. I do think, to my memory, and I haven't sat on the court as long as Judge Kelly, I do think that this is the first time that I have ever heard a combination of a citation to Ecclesiastes and Pete Seeger. And probably the last. Judge Kelly, did you have any questions? I do not. Thank you. All right, thank you. This also was very, I think the appellant, well, I know you're way out of time. Sorry. This was very well presented, both in your briefing and in your argument. Thank you.